1  JODI LINKER, Bar No. 230273
   Federal Public Defender
2  Northern District of California
   VARELL FULLER, Bar No. 202680
3  Assistant Federal Public Defender
   8th Floor - Suite 820
4  55 South Market Street
   San Jose, CA 95113
5  Telephone:  (408) 291-7753
   Facsimile:  (408) 291-7399
6  Email:      Varell_Fuller@fd.org

   Counsel for Defendant Agnihotri

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAJIV AGNIHOTRI,<br><br>Defendant. | **Case No.:** CR 23–354 PCP<br><br>**DEFENDANT'S REPLY TO GOVERNMENT'S SENTENCING MEMORANDUM**<br><br>**Court:**          Courtroom 8, 4th Floor<br>**Hearing Date:**  November 12, 2025<br>**Hearing Time:**  9:00 a.m. |

Mr. Rajiv Agnihotri respectfully submits this reply to address the government's sentencing memorandum ("Gov't Sent. Mem.") and its arguments regarding: (1) the government's failure to file a notice of related cases; (2) the Converted Drug Weight calculation based on WhatsApp chat messages; and (3) the resulting sentencing disparity.

The government's sentencing recommendations, whether at the high end of the Guidelines range (78 months) or an above-guidelines sentence (100 months), cannot be reconciled with its request for straight probation and a 100% downward variance in *United States v. Segovia*, and would necessarily result in an unwarranted and extraordinary sentencing disparity. At bottom, both Mr. Agnihotri and Segovia distributed controlled substances on behalf of the same Durgapura network.

1  Many of the government's arguments about the nature and circumstances of the offense apply equally
2  to Segovia. Yet, the government consistently treats the same facts as aggravating in Mr. Agnihotri's
3  case and mitigating in Segovia, reflecting a completely different approach to Segovia compared to
4  Mr. Agnihotri.
5  　　For the reasons outlined in Mr. Agnihotri's sentencing memorandum, and as set forth herein,
6  the Court should impose a sentence of 12 months and 1 day.
7  　　*Notice of Related Cases*
8  　　The government argues that the defense should have been aware of *United States v. Segovia*
9  because the defendant's name appeared in discovery. That claim is incorrect, and the government has
10 an independent obligation to comply with the Civil and Criminal Local Rules pertaining to related
11 cases.  Here, the procedural history is troubling. Local Civil Rule 3-12 requires that related cases be
12 identified and filed in the lowest-numbered case, but the government failed to do so, even though the
13 same AUSA handled both matters, and the felony Information in *Segovia*, assigned to the Honorable
14 Eumi K. Lee, was filed just five days after Mr. Agnihotri's August 7, 2024 change of plea before this
15 Court. *See* Segovia, ECF No. 55; *Agnihotri*, ECF No. 33. Because the cases were not identified as
16 related, *Segovia* proceeded before a different judge, where the government was able to advance
17 mitigating arguments that are irreconcilable with those it now makes in aggravation against Mr.
18 Agnihotri. This inconsistent approach and the failure to provide notice of *Segovia* by filing a related
19 case notice risk creating the appearance of gamesmanship, undermining the goals of the fair
20 administration of justice, equal justice under the law, and raising concerns about implicit bias.
21 　　*Converted Drug Weight from WhatsApp Chats*
22 　　The government suggests Mr. Agnihotri has already received a break, citing WhatsApp text
23 message chats as evidence of "drugs sold." Gov't Sent. Mem. 18:6–20. The government's WhatsApp
24 Converted Drug Weight ("CDW") table is pure speculation, and it should be given little to no weight.
25 *Id*. There is no evidence whatsoever of the weight of the drugs referenced in the "Durangrupa Chats,"
26 so the government's calculation is based entirely on unsupported assumptions about the weight of
27 each tablet. For example, the government's calculation repeatedly notes that it "assumes" the
28 weights, types, and quantities of controlled substances needed to compute the CDW, without any

supporting lab data, verified dosage information, or evidence that the substances referenced were actually seized, tested, or shipped. The weights the government relies on are entirely made up and lack any evidentiary basis. The government also mischaracterizes the messages' content, giving the false impression that the medications were clearly and consistently identified. In reality, the chats contained vague and inconsistent references to various medications, and often lack information about the manufacturer, dosage, or weight. The chart reflects the government's interpretation of the message. As the government acknowledges, the government must prove the type, quantity, and purity by a preponderance of the evidence, based on information that bears sufficient indicia of reliability to support its probable accuracy, and "the district court must err on the side of caution" in conducting this analysis. *United States v. Kilby*, 443 F.3d 1135, 1141 (9th Cir. 2006). Such conjecture cannot form the basis of a Guideline calculation. *See, e.g., United States v. Garcia-Sanchez*, 189 F.3d 1143, 1149 (9th Cir. 1999) (reversing drug-quantity estimate unsupported by representative evidence). Indeed, in numerous cases, the Ninth Circuit and others have excluded purported drug-sale evidence from the quantity calculation when that evidence was not sufficiently reliable. *See, e.g., United States v. Culps*, 300 F.3d 1069, 1078 (9th Cir. 2002)[1]; *see also United States v. Rivera-Maldonado*, 194 F.3d 224, 231 (1st Cir. 1999) (holding that estimating the average drug transaction size of 86,400 transactions by using a sample of 12 controlled buys was improper). Notably, as an example of disparate treatment between this case and *Segovia*, there the government deemed unseized and untested drugs too unreliable for inclusion in the guideline calculation, or treated them as a *mitigating factor*. Segovia Gov't Sent. Mem. 5:18–22. Here, it relies on the same type of unverified evidence to suggest an inflated CDW for unseized drugs as an aggravating factor for Mr. Agnihotri.

*Safety Valve*

The government implies that Mr. Agnihotri's written proffer was untimely, but safety-valve issues are typically addressed post-conviction during the presentence stage, as occurred here. Any delay was due solely to difficulties in securing a Punjabi interpreter with jail clearance, not to any

---

[1] ("The use of nine buys to estimate the 60,250 transactions the government says took place is statistically and legally unreliable. Without information showing that the sample purchases are representative of the larger conduct, there is an inadequate evidentiary basis for the quarter-ounce estimate.")

lack of diligence on the part of the defense. The government contends that Mr. Agnihotri's written safety-valve submission was "ineffective" because it was brief, did not include sufficient information about co-conspirators, and was not delivered through an in-person debrief. Gov't Sent. Mem. 10:22–11:4, 23:10–25. The government also asserts that Mr. Agnihotri's proffer was incomplete because it lacked details about his use of multiple post office boxes under false names, including why he opened them, who advised him to do so, how he obtained the false identification, and whether that identification was connected to his suppliers in India. Gov't Sent. Mem. 25:27-27; 26: 1-3. It further asserts that the proffer minimized Mr. Agnihotri's role, omitted details about payments, failed to explain his financial transactions, and did not truthfully provide all information he had concerning the offense. *Id.* 7:23–27, 23:14–19, 25:2–6.

First, Mr. Agnihotri was willing and remains willing to provide any additional information necessary to address the claimed deficiencies, but the government flatly rejected the defense request to do so. Second, the government is incorrect regarding the permissible format of a safety valve proffer, and its position mischaracterizes the law and record. There is no authority in 18 U.S.C. § 3553(f)(5), U.S.S.G. §§ 2D1.1(b)(18) or 5C1.2, or Ninth Circuit precedent to deny Mr. Agnihotri safety-valve relief because his disclosure was written rather than oral. The Ninth Circuit has made clear that a safety-valve disclosure may be provided in either form. *United States v. Mejia-Pimental*, 477 F.3d 1100 (9th Cir. 2007); *United States v. Salazar*, 61 F.4th 723 (9th Cir. 2023). Section 3553(f)(5) requires only that a defendant truthfully provide all information he possesses concerning the offense; it does not require that the information be conveyed orally or in any particular format.

Third, the government's claim that Mr. Agnihotri was untruthful in his proffer is unfounded and unsupported by the record. Mr. Agnihotri's written statement aligns with the discovery and evidence in the case. There is no indication in the record that he misrepresented his role, withheld information, fabricated facts, or shifted blame onto others. Fourth, Mr. Agnihotri's proffer is sufficiently thorough and detailed to justify the Court granting safety valve relief. He provided a thorough and candid account of the scope of his involvement, identified others within his knowledge, estimated the total financial gain, and acknowledged conduct beyond what was strictly necessary to prove his guilt. *See* Def. Exb. F.

In response to his proffer, the government declined to raise any specific factual deficiencies or request follow-up clarification before sentencing. Its current objections, raised only after rejecting the defense's good-faith efforts to address the government's claimed deficiencies, should not bar relief under the safety-valve provision. *See United States v. Real-Hernandez*, 90 F.3d 356, 361 (9th Cir. 1996) (a truthful and complete disclosure "in any context" satisfies § 3553(f)(5)). While the government may now have additional questions for him, its refusal to engage, based on its insistence on an in-person proffer—an approach for which it cites no authority—cannot serve as a basis for denying safety-valve relief. To do so would effectively grant the government an impermissible veto over a defendant's eligibility under § 3553(f)(5). *Id.*

*Sentencing Disparity*[2]

In its sentencing memorandum, the government portrays Mr. Agnihotri as a "sophisticated insider" in a foreign trafficking network, asserting that he personally distributed 215,000 pills in 52 days and was motivated purely by greed. (Gov't Sent. Mem. 1:1–3.) It emphasizes his alleged organization, planning, and deceit, citing "stash houses," "fake IDs," "forged bills," and "mass marketing" to argue against any mitigating-role adjustment and to justify a high-Guidelines sentence of 78 months. By contrast, in *United States v. Segovia*, the government describes Ms. Segovia as "not a drug dealer" but a "drug-addicted customer" who made "very poor choices" and whose conduct stemmed from self-delusion and dependency. Segovia Gov't Sent. Mem. 1:1–3. Although Ms. Segovia reshipped controlled substances for the same "Durgapura" network and sent numerous packages on its behalf, the government characterizes her actions as "unthinking" and "done to build rapport" with her supplier. *Id.* Thus, Mr. Agnihotri is labeled the insider trafficker, while Segovia, who maintained a multiyear supply relationship, knowingly reshipped medication she knew was *misbranded*, and worked adjacent to law enforcement, is portrayed as a misguided addict.

The government's characterizations are clearly inconsistent despite materially overlapping conduct and identical supplier networks. This stark contrast in tone and characterization underscores

---

[2] Mr. Agnihotri respectfully invites the Court to review and consider the government's sentencing position in *United States v. Segovia*, No. 23-cr-00337-EKL (N.D. Cal.), in assessing the need to avoid an unwarranted sentencing disparity.

a results-driven inconsistency that undermines equal justice and sentencing parity. At bottom, Ms. Segovia worked with the Durgapura network for a more extended period and admitted to having possessed a greater quantity of Tapentadol than Mr. Agnihotri. Yet the government depicts her conduct as the product of addiction and poor judgment while portraying Mr. Agnihotri as a profit-driven trafficker who operated with sophistication and intent. The disparity in those portrayals underscores the fundamentally inconsistent way in which the government has characterized two defendants engaged in materially similar conduct within the same distribution network.

Two specific examples clearly demonstrate the government's disparate treatment. For instance, Mr. Agnihotri has already discussed the government's conflicting arguments regarding unseized and untested drugs. As another example, the government cites a doctor's tragic fatal overdose to emphasize the "dangerousness" of Mr. Agnihotri's conduct. Gov't Sent. Mem. 30:2-14. Whereas in Segovia, it references the same incident to suggest that "Segovia was lucky to escape [the doctor's] fate" despite her reshipping mislabeled drugs. Segovia Gov't Sent. Mem. 21:1–19. This inconsistent framing underscores the government's selective, results-driven advocacy, which seeks to impose a disproportionately severe punishment on Mr. Agnihotri for conduct materially similar to that of Segovia.

The Court should reject the government's attempts to overstate how these cases are dissimilar. Mr. Agnihotri does have a criminal history, unlike Ms. Segovia, and it is fully accounted for in his Criminal History Category II under the advisory Guidelines. His prior offenses and performance on supervision are reflective of his longstanding and severe alcoholism, which has been well documented throughout these proceedings. A modest sentencing disparity may therefore be appropriate, as reflected in the defense's recommendation. The government's attempt to recast this history as evidence of greater culpability, rather than as a symptom of his substance use disorder, is neither credible nor consistent with the individualized sentencing principles embodied in 18 U.S.C. § 3553(a).

## CONCLUSION

For the foregoing reasons, Mr. Rajiv Agnihotri respectfully request that the Court impose a sentence of 12 months and 1 day.

Dated:   November 10, 2025                     Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

              /S
VARELL FULLER
Assistant Federal Public Defender